**SO ORDERED.**

**SIGNED this 4 day of June, 2015.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

IN RE:                                                                                          CASE NO. 12-06206-8-DMW

**INTERCOASTAL CONTRACTING, INC.**
                                                                                                               CHAPTER 11
            **DEBTOR**

## ORDER ALLOWING OBJECTION TO CLAIM

This matter comes on to be heard upon the Objection to Claim # 17 of the New Hanover County Tax Office ("Objection") filed by Intercoastal Contracting, Inc. ("Debtor") on February 18, 2015 and the response filed by New Hanover County ("County"). The parties filed a Stipulation of Uncontested Facts ("Stipulation") on April 6, 2015. The court conducted a hearing in Raleigh, North Carolina on April 8, 2015. James O. Carter, Esq. appeared for the Debtor. Counsel for the County was not present. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.      BACKGROUND.

1.      The Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on August 29, 2012 ("Petition Date") and is acting as a debtor-in-possession pursuant to 11 U.S.C. § 1107. As of the Petition Date, the Debtor operated as a marine

contracting company for construction projects including the repair and building of bridges and aquatic bulkheads.

2. The Debtor did not own any real property as of the Petition Date. On Schedule B filed with the court on October 1, 2012, the Debtor listed personal property ("Personal Property") with a value of $3,195,331.57. The majority of the Personal Property consisted of equipment ("Equipment") used to operate the Debtor's business, including vehicles, trailers, boats and heavy construction machinery. The Debtor valued the Equipment at $3,103,422.39. Other Personal Property included cash, checking accounts and a membership certificate ("Membership Certificate") in a marina.

3. As of the Petition Date, the Equipment served as collateral for loans totaling $7,974,087.43, including a blanket lien in favor of SunTrust Bank ("SunTrust") against "all of the Debtor's personal property." SunTrust's lien was perfected through a UCC Financing Statement filed April 12, 2007 with the North Carolina Secretary of State and extended October 4, 2011, and had a balance of $1,123,727.46 on the Petition Date.

4. On October 4, 2012, the County filed a Proof of Claim, designated as Claim No. 17, asserting an unsecured priority claim ("Claim") in the amount of $33,191.15. The Claim, made pursuant to 11 U.S.C. § 507(a)(8), is the result of a pre-petition assessment made by the County for 2012 taxes upon the Equipment. The Debtor did not list the Membership Certificate or accounts on the tax schedules filed with the County, and the County has not asserted that they are taxable personal property.[1] The 2012 tax bill was last due and payable without interest on January 8, 2013, after the Petition Date.

---

[1] The Membership Certificate does not appear to be taxable, pursuant to N.C. Gen. Stat. § 105-275(31); *see also In re Appeal of Tillman*, 187 N.C. App. 739, 745 (N.C. Ct. App. 2007) (a membership interest may be taxable, if it belongs and appertains to the owner's taxable real property).

5. The Claim is unsecured because the Debtor did not own any real property onto which the Claim could attach, and the County did not levy or otherwise obtain a lien on the Equipment prior to the Petition Date. *See* N.C. Gen. Stat. § 105-355. In either December, 2012 or January, 2013, the Debtor paid $19,671.85 toward the Claim.

6. Following the Petition Date, the Debtor retained substantially all of the Equipment and used it for the continued operation of the Debtor's business; however, in July or August of 2014,[2] the Debtor sold its remaining Equipment to Smith-Rowe, LLC pursuant to an Agreement of Purchase and Sale dated April 15, 2014 and approved by the court on July 2, 2014.

7. The proceeds generated by the sale of the Equipment, including the sale of one item of equipment in June, 2013, totaled $3,040,000.00, $63,422.39 less than the value the Debtor had estimated on Schedule B.

8. From the Petition Date until the sale of the Debtor's remaining Equipment in July or August of 2014, the Debtor had net operating losses of $144,260.14.

9. The Debtor asserts that the Claim should be disallowed under § 502(b)(3) because the Claim "exceeds the value of the interest of the estate in such property." 11 U.S.C. § 502(b)(3). The Debtor further asserts that because the Claim should be disallowed, the $19,671.85 that the Debtor paid toward the Claim should be applied to the Debtor's post-petition tax liabilities to the County.

B. JURISDICTION.

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

---

[2] The Debtor filed a Notice of Completed Sale on August 15, 2014 stating that the sale was completed on August 14, 2014. The Stipulation states that the Debtor sold the remaining Equipment in July, 2014, and the Debtor's president executed a Bill of Sale on August 12, 2014.

2.      The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C.      DISCUSSION.

1.      Section 502(b)(3).

a.      A proof of claim filed in accordance with § 501 of the United States Bankruptcy Code is deemed allowed pursuant to § 502(a), unless a party in interest objects to the claim. 11 U.S.C. § 502(a).

b.      If an objection is made to a claim, § 502(b)(3) states that the claim shall not be allowed "if such claim is for a tax assessed against property of the estate, [and] such claim exceeds the value of the interest of the estate in such property." 11 U.S.C. § 502(b)(3).

c.      A claim that is disallowed under § 502(b)(3) "is disallowed for all purposes and the claimant will not be entitled to a distribution of any funds from the estate, even if there are funds available for distribution." *In re Precision Concepts, Inc.*, 305 B.R. 438, 442 (Bankr. M.D.N.C. 2004) (citing *In re Milit, Inc.*, 231 B.R. 604, 605-06 (Bankr. W.D. Tex. 1999)).

2.      The Debtor had no Equity in the Equipment.

a.      Courts have identified various situations in which § 502(b)(3) applies, including when the subject property is repossessed prior to the petition date; when a trustee abandons the property post-petition; and when the automatic stay is lifted and either the secured creditor is granted ownership of the property or a foreclosure sale is conducted. *See In re Spruill*, 78 B.R. 766, 769-70 (Bankr. E.D.N.C. 1987). In those cases

the estate has little or no interest in the property, and the tax claim is deemed to exceed the value of the estate's interest.

      b.    In *Spruill*, the Chapter 11 debtors' real property was sold at foreclosure approximately five months after the petition date. 78 B.R. at 768.  Prior to the foreclosure sale, the court entered a consent order between the debtors and their secured creditors which included a finding that the debtors had no equity in the property. *Id.*  After the foreclosure, the creditors that were secured by the foreclosed property paid the unpaid property taxes and filed deficiency claims against the debtors' estate. *Id.* at 768.  The court ruled that because the court had previously found there was no equity in the property, and because the proceeds from the foreclosure sale did not satisfy the claims, the value of the estate's interest in the property was zero. *Id.* at 768.  The pre-petition unsecured tax claim assessed against the property exceeded the value of the estate's interest, and the tax claim was disallowed. *Id.* at 770.

      c.    The court finds the facts of this case comparable to those in *Spruill*, making *Spruill* instructive for purposes of determining the value of the estate's interest in the Equipment.  The Debtor sold the Equipment through private sales rather than at foreclosure, but that distinction does not change the fact that the Equipment sold for far less than the total of the secured claims against it.  The Debtor had no equity in the Equipment from the Petition Date through the time when the Equipment was sold, and the Claim exceeds the value of the estate's interest in the Equipment.

5

3.   The Personal Property did not Generate Positive Net Income to the Debtor's Estate Before it was Sold.

   a.   One distinction between this case and *Spruill* is the length of time the Debtor retained the Equipment post-petition. The Debtor retained substantially all of the Equipment for approximately two years before selling it, whereas the debtors in *Spruill* sold their property five months after the petition date. The retention of property post-petition may affect a court's analysis under § 502(b)(3).

   b.   In *In re Precision Concepts, Inc.*, the United States Bankruptcy Court for the Middle District of North Carolina went beyond a "*Spruill*-type" inquiry into an estate's equity in property, noting that the fact property is over-encumbered does not necessarily mean the property is of no value to the estate. 305 B.R. 438, 445 (Bankr. M.D.N.C. 2004). The court held that if, after the petition date, a debtor retains property against which a tax claim is asserted, the court should examine what monetary benefit the property brought to the estate before it was sold. *Id.*

   c.   In *Precision*, the debtor's use of personal property post-petition generated over $3,000,000.00 in net sales and over $1,000,000.00 in corresponding cash. *Id.* at 444. The court found that the monetary benefit generated by the property negated the debtor's assertion that the tax claim was in excess of the value of the estate's interest in the property. *Id.* at 445. The court rationalized that the purpose of § 502(b)(3) "is to prevent the depletion of the debtor's estate by the payment of taxes assessed against property that has no value to the estate and is likely to be abandoned by the trustee." *Id.* at 442 (quoting 4 Collier on Bankruptcy ¶ 502.03[4], p. 502-34 (15th ed. 1999)). Because the property in *Precision* generated value before it was sold, requiring the debtor to pay the tax claim

against the property would not deplete the estate in contravention of the purpose of § 502(b)(3). *Id.* at 445.

    d. The Debtor asserts that the *Precision* court's analysis is too broad to apply to this case, because it examines post-petition activity to determine value of property as it relates to a pre-petition assessment. Regardless of whether its analysis is overly broad, the *Precision* decision does not affect the outcome in this case. Despite holding onto the Equipment post-petition and continuing operations for approximately two years, the Debtor incurred net operating losses prior to the sale of the Equipment. The Equipment was both over-encumbered and failed to generate any positive value to the estate. Requiring the Debtor to pay the Claim would deplete the estate to the detriment of the Debtor's remaining creditors, and § 502(b)(3) prevents that result.

  4. Because the Claim is disallowed pursuant to § 502(b)(3), the $19,671.85 that the Debtor has already paid toward the Claim should be applied to the Debtor's outstanding post-petition tax liabilities to the County. It does not appear that the County's post-petition cost of administration claim would not otherwise be paid in this case; now therefore,

  It is ORDERED, ADJUDGED and DECREED as follows:

  1. The Claim is disallowed; and

  2. The County shall reallocate the Debtor's payment of $19,671.85 to the Debtor's outstanding post-petition tax liabilities.

END OF DOCUMENT